### THE WINNIE.

#### (District Court, S. D. New York. April 24, 1905.)

**1. TOWAGE—SUIT AGAINST TUG—EVIDENCE OF CONDITION OF SEA.**

In determining the condition of the sea during a towage service in controversy, the allegations of the pleadings and the observations of the witnesses taken on the water are to be regarded, rather than a record condition of the wind noted at a weather station several miles distant and at a considerable altitude above the water.

**2. SAME—INJURY OF TOW BY POUNDING IN ROUGH WATER—LIABILITY OF TUG.**

It is the duty of a tug to exercise care to provide against the injury of a tow alongside by pounding against her side when the water is rough, and she is liable for an injury so received because of the improper arrangement of the tow.

In Admiralty. Suit against tug for injury of tow.

James J. Macklin, for libellant.
Robinson, Biddle & Ward, for claimant.

ADAMS, District Judge. This action was brought by William H. Follette, the owner of the canal boat P. J. Fermoil, to recover

against the steamtug Winnie, the damages suffered by him through an injury received by the canal boat while in tow of the tug on the 20th day of January, 1901.

It appears that the Winnie had two boats in tow, one on each side, the Fermoil being on the port side, bound from Atlantic Basin to a stake boat off Liberty Island, where the boats were to be taken by a regular Amboy tow. The tide was ebb. Both sides allege that the wind was strong from the southwest, causing a choppy sea, but according to testimony from the Weather Bureau, it appears that the records did not show that such was the condition. It seems that the pleadings and the observations of the witnesses, taken on the water, should be regarded in a case of this kind, rather than a record condition of the wind, noted from a point several miles distant and at a considerable altitude above the water.

When the tow started from Atlantic Basin, the water being rough, such a degree of care as the condition required was imposed upon the tug. It appears that the boat was in fairly good condition when she started on the voyage and that when she was delivered at the stake boat she had two planks broken on her starboard side, caused by pounding against the bluff of the tug's bow.

The testimony in the case is very conflicting, the libellant's one witness, the master of the boat, stating that the towed boats were drawn, at the bow, within 5 or 6 feet of each other, with the effect of bringing the Fermoil's side, about amidships, against the bluff of the tug's bow, which, in connection with the rough water, caused the damage. The claimant, on the other hand, contends, by several witnesses, that the boats were not drawn closely together at the bow but fastened properly alongside the tug, with her width, some 18 or 20 feet, between them, and further that such a method of towing as the libellant contends for, would not only have been improper and negligent, but practically impossible, because it would have required the boats to have been pushed sidewise to some extent.

The preponderance of the testimony, as well as the probabilities, in view of the additional strain put upon the tug, are with the claimant, but unless something of the kind contended for by the libellant was done, I see no way of accounting for the damage. The claimant urges that it was caused by a lack of a proper arrangement of the boat's fenders, which permitted her side to pound against the tug in consequence of some ferry boat swells, which were unavoidably encountered. The libellant's testimony shows that the boat had a fore and aft fender, 14 to 16 feet long, arranged to protect her against the tug's up and down fenders, one of which was just forward of the break and the others not touching. I feel constrained to adopt the libellant's contention with respect to the rough water and arrangement of the tow, and the conclusion is reached that the tug did not exercise the care the injured boat was entitled to.

Decree for the libellant, with an order of reference.